# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                   **Case No. 12-CR-88**

**SHAKIL WAMIQ**
   **Defendant.**

## DECISION AND ORDER

In this case, the government charged nine defendants with trafficking in contraband cigarettes. Two defendants – Shakil Wamiq and Mazher Khan – remain for trial, which is scheduled for April 8, 2013. Wamiq and Khan are charged in count one with conspiring to ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes, contrary to 18 U.S.C. §§ 371 & 2342. Wamiq is also charged with four substantive counts (counts thirty, thirty-four, thirty-seven, and thirty-eight) and Khan with five substantive counts (counts nine, twelve, thirteen, fifteen, and twenty-five) of violating § 2342.

Before me are Wamiq's motion in limine to bar evidence pursuant to Fed. R. Evid. 403 & 404(b), and the government's motion in limine to resolve a potential advocate-witness conflict on the part of Wamiq's lawyer, Glenn Seiden. For the reasons that follow, I will deny in part and grant in part Wamiq's motion to exclude evidence. The evidence I exclude will obviate the need for Seiden to testify and thus moot the government's motion.

**I.**

Wisconsin and Illinois regulate the distribution of cigarettes, requiring that distributors be licensed and pay a tax. Distributors pay the tax by purchasing tax stamps, which are then

affixed to each pack of cigarettes. Distributors are forbidden to obtain "unstamped" cigarettes from other than authorized sources. See generally 35 ILCS 130/1 et seq.; Wis. Stat. ch. 139. The federal Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 et seq., criminalizes the transport, receipt, possession, sale, or distribution of "contraband cigarettes," 18 U.S.C. § 2342, defined as a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable state or local cigarette taxes, 18 U.S.C. § 2341(2). Only certain persons may possess such cigarettes, including licensed manufacturers and exporters, common carriers transporting cigarettes under a proper bill of lading, individuals licensed by the state who are in compliance with the accounting and payment requirements relating to such license, and government agents having possession of such cigarettes in connection with the performance of official duties. 18 U.S.C. § 2341(2).

In this case, the government alleges that the defendants obtained untaxed/unstamped cigarettes from an unauthorized source in the Eastern District of Wisconsin (an undercover ATF agent), which they then transported for distribution and sale in the Northern District of Illinois. The government seeks to introduce at trial evidence that Wamiq also purchased unstamped cigarettes from unauthorized sources in Lombard, Illinois between June 2010 and September 2010, and in Hickory Hills, Illinois between May 2011 and January 2012. The government also seeks to introduce evidence of a December 1, 2011 interview, in which Wamiq, accompanied by attorney Seiden, admitted the Illinois purchases to ATF agent Michael Casey. The government indicates that Casey told Wamiq that Wamiq had admitted to committing a crime by purchasing these untaxed/unstamped cigarettes. The government further alleges that, despite this admonition from Casey, Wamiq continued to obtain contraband cigarettes, including from the Wisconsin source as charged in the instant indictment.

The only witnesses to the December 1, 2011 interview were Wamiq, Seiden, and Casey. Based on an indication that Seiden disputed the accuracy of Casey's report of the interview, the government filed a motion seeking a hearing on a potential advocate-witness conflict. See United States v. Jones, 600 F.3d 847, 861-62 (7th Cir. 2010) ("The advocate-witness rule generally bars a lawyer from acting as both an advocate and a witness in the same proceeding except under special circumstances."). At the March 29 final pre-trial, I asked defense co-counsel precisely what Seiden would dispute about Casey's recitation. She indicated that Seiden would testify that Agent Casey told Wamiq that he could continue doing what he was doing, because he was a licensed stamper, and that there was no investigation going on.[1] Counsel did not indicated that Seiden would dispute any of the statements Casey attributes to Wamiq.

**II.**

Under Rule 404(b), the government may not introduce evidence of other crimes, wrongs, or acts in order to prove the defendant's propensity to commit the crime charged. Fed. R. Evid. 404(b)(1); United States v. Miller, 673 F.3d 688, 694-95 (7th Cir. 2012). However, such evidence may be admitted for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). In deciding whether to admit 404(b) evidence, the district court considers whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is

---

[1] In fact, the ATF in Illinois was conducting an investigation into contraband cigarette trafficking.

3

sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. United States v. Chapman, 692 F.3d 822, 827 (7th Cir. 2012).[2] Of course, if the evidence constitutes direct evidence of the crime charged, Rule 404(b) does not apply. See, e.g., United States v. Vargas, 689 F.3d 867, 873-74 (7th Cir. 2012); United States v. McKibbins, 656 F.3d 707, 711 (7th Cir. 2011); United States v. Boone, 628 F.3d 927, 933 (7th Cir. 2010).

In his motion, Wamiq argues that the court should bar evidence of the Illinois purchases because, at all relevant times, he held an Illinois license allowing him to buy unstamped cigarettes, stamp them, and resell them. He states that much of the evidence at issue was gathered during an investigation in the Northern District of Illinois pursuant to which he was charged, but the government later moved to dismiss that case. He contends that the dismissal was due at least in part to the fact that, as a licensed stamper with the state of Illinois, he had the ability and the right to buy unstamped cigarettes, which he would then stamp and resell. He argues that the government should not be allowed to use conduct that it decided not to prosecute as evidence of previous bad acts in this case. In sum, Wamiq contends that the Illinois purchases do not actually constitute "bad acts," and that allowing this evidence would be unfairly prejudicial, confusing the issues and misleading the jury about the nature of the case against him.

---

[2] Wamiq also cites Fed. R. Evid. 403, which allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When dealing with prior bad acts, the final prong of the Rule 404(b) test incorporates Rule 403. United States v. Moore, 641 F.3d 812, 824 (7th Cir. 2011).

4

In its response, the government indicates that in the present case Wamiq is alleged to have purchased unstamped cigarettes from a Milwaukee ATF undercover warehouse with his co-defendant, Mohammad Uddin, acting as an intermediary. In the Illinois investigation, Wamiq was observed purchasing unstamped cigarettes from an ATF confidential informant in a parking lot and at an Illinois undercover warehouse with a different associate acting as an intermediary. The government argues that this evidence is probative of Wamiq's motive, plan, intent, and lack of mistake or accident. The government further argues that, given Wamiq's apparent claim that he was entitled to make these purchases based on his Illinois license, his knowledge with respect to the lawfulness of his activity is an issue; thus, the government seeks admission of Agent Casey's admonition to Wamiq that his Illinois purchases were illegal. The government notes that on December 8, 2011, one week after his interview with Casey, Wamiq allegedly traveled to the Milwaukee undercover warehouse, where with Uddin he made an unstamped cigarette purchase of 8100 cartons under circumstances exactly like those that Casey had advised him to be criminal. Further purchases followed, from both the Illinois and Milwaukee undercover warehouses.

I agree with the government that evidence of the Illinois purchases is admissible under Rule 404(b). First, the evidence goes to Wamiq's motive and plan to purchase unstamped cigarettes from unauthorized sources, contrary to the requirements of his license,[3] enabling him to undercut his competition by obtaining and selling cigarettes at a lower cost. Moreover, the

---

[3] Wamiq does not explain how his Illinois license would permit him to stamp cigarettes obtained in the manner alleged by the government. See 35 ILCS 130/3 ("A distributor may apply tax stamps only to original packages of cigarettes purchased or obtained directly from an in-state maker, manufacturer, or fabricator licensed as a distributor under Section of [the Illinois Cigarette Tax Act] or an out-of-state maker, manufacturer, or fabricator holding a permit under Section 4b of this Act.").

5

evidence constitutes direct evidence of guilt as well, as it tends to rebut any defense that Wamiq had purchased sufficient tax stamps to apply to all of the cigarettes he purchased, in both Wisconsin and Illinois.

Second, the Illinois and Wisconsin activity is quite similar, with Wamiq, acting through an intermediary, allegedly obtaining unstamped cigarettes from undercover warehouses in both states. The timing of the conduct overlaps, with the instant conspiracy alleged to have continued from February 2011 to April 2012, and the Illinois conduct from June 2010 to January 2012. Third, the Illinois evidence, which includes surveillance videos/photos and admissions by Wamiq, appears sufficient to permit a reasonable jury to find, by a preponderance of the evidence, that the other acts occurred. See United States v. Burke, 425 F.3d 400, 410 (7th Cir. 2005) (applying the preponderance standard).[4]

Fourth, given the strong similarly between the Illinois evidence and the Wisconsin evidence, the likelihood that the jury will draw the forbidden propensity inference is slight. See United States v. Paredes, 87 F.3d 921, 925 (7th Cir. 1996). Nor is this the type of evidence that would cause the jury to decide the case on an improper, e.g., emotional, basis. See United States v. Chambers, 642 F.3d 588, 594 (7th Cir. 2011). The government indicates that, in addition to the testimony of Agent Casey, it intends to present evidence of the Illinois activity in summary fashion, with a single agent describing the investigation and presenting photographs clipped from the video evidence, along with a summary chart of the dates and quantities of Wamiq's purchases from the Illinois undercover warehouse. Thus, the likelihood

---

[4]Wamiq presents no authority supporting exclusion of this evidence just because Illinois authorities declined to prosecute him. See Dowling v. United States, 493 U.S. 342, 348-49 (1990) (permitting under Rule 404(b) introduction of evidence of crime of which the defendant had been acquitted).

6

of jury confusion or waste of time appears slight.

Finally, I will, if requested, provide an appropriate limiting instruction. Such instructions are "effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence," United States v. Jones, 455 F.3d 800, 809 (7th Cir. 2006), and the court assumes that the jury follows them, United States v. Miller, 688 F.3d 322, 330 (7th Cir. 2012); see also United States v. Chambers, 642 F.3d 588, 595 (7th Cir. 2011) (presuming, absent a showing that the jury could not follow the court's instruction, that the jury limited its consideration of the testimony in accordance with the instruction).

For these reasons, I will admit evidence of the Illinois purchases, including Wamiq's admissions to Agent Casey. However, I will exclude Casey's statement to Wamiq that Wamiq had admitted to committing a crime. Unlike Wamiq's statements to Casey, which qualify as admissions by a party-opponent, Fed. R. Evid. 801(d)(2), Casey's statement to Wamiq is hearsay, Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").[5] To the extent that the government seeks to offer the statement not for its truth but for the effect on Wamiq, see Fed. R. Evid. 801(c)(2), i.e., to show that Wamiq then knew his conduct was unlawful, such knowledge is not necessary in this case. The parties agree that in order to obtain a conviction, the government must prove that Wamiq acted "knowingly," which means that he realized what he was doing, was aware

---

[5]There is no indication that admission of Casey's statement is necessary to put Wamiq's statements in context or to make what Wamiq said intelligible to the jury. See, e.g. United States v. Gaytan, 649 F.3d 573, 579 (7th Cir. 2011). It appears that Wamiq had already made the relevant admissions at the time Casey made the statement about the legality of the conduct.

7

of the nature of his conduct, and did not act through ignorance, mistake, or accident. Pattern Criminal Jury Instructions of the Seventh Circuit § 4.10. The Seventh Circuit has explained that under this mens rea the defendant must have knowledge of the facts constituting the offense, not knowledge that those facts constitute a crime. See, e.g., United States v. Stein, No. 12-2182, 2013 WL 1110868, at *2-3 (7th Cir. Mar. 19, 2013); United States v. Wilson, 159 F.3d 280, 289 (7th Cir. 1998).[6] Finally, whatever minimal relevance Casey's statement may have is substantially outweighed by the danger of unfair prejudice and confusion to the jury. The court does not generally permit witnesses to testify that conduct is legal or illegal; rather, the court instructs the jury on what the law is. See United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008) ("The only legal expert in a federal courtroom is the judge."). Caputo concerned expert testimony, but the Seventh Circuit has also cautioned district judges not to allow lay witnesses to offer conclusions regarding the "legal implications" of conduct. United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994); see also United States v. Locke, 643 F.3d 235, 241-42 (7th Cir. 2011) (collecting cases); United States v. Wantuch, 525 F.3d 505, 514 (7th Cir. 2008) (holding that a witness's opinion on whether the defendant knew his actions were "legal" demanded a conclusion as to the legality of the defendant's conduct, which is unhelpful to the jury under Rule 701).

With Casey's statement about what he told Wamiq excluded, there is no need for Seiden to provide testimony disputing what Casey said. Accordingly, the government's motion

---

[6]It would be different if Wamiq were charged with a "specific intent" crime or one with the mens rea of "wilfully," which has been construed to require proof that the defendant acted with knowledge that his conduct violated a legal duty. E.g., United States v. Wheeler, 540 F.3d 683, 689 (7th Cir. 2008) (explaining that such statutes constitute an exception to the traditional rule that ignorance of the law is no excuse).

8

to disqualify him pursuant to the advocate-witness rule is moot.

**III.**

**THEREFORE, IT IS ORDERED** that Wamiq's motion is limine (R. 125) is granted in part and denied in part, and the government's motion is limine (R. 105) is denied as moot.

Dated at Milwaukee, Wisconsin, this 1st day of April, 2013.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge